Carmen FORCUCCI and Theresa
Forcucci, Plaintiffs,
Appellants,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant, Appellee.

No. 93–1490.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1993.

Decided Nov. 1, 1993.

Mark D. Shuman, Boston, MA, for plaintiffs, appellants.

Alice Olsen Mann with whom Ralph C. Sullivan and Morrison, Mahoney & Miller, Boston, MA, were on brief, for defendant, appellee.

Before STAHL, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

The district court's allowance of defendant's Fed.R.Civ.P. 56(c) summary judgment motions, adopting a magistrate's recommendation, raises questions of opinion, the law as well as the basic facts being undisputed. 817 F.Supp. 195 (1993). Did defendant, an insurer on a standard automobile policy providing coverage in case of injury by a party who was uninsured or underinsured ("UIM coverage"), act fairly, reasonably, promptly, with respect to a claim? Mass.G.L. c. 93A, § 9 and c. 176D, § 3(9). (Counts I and II). Was its conduct "extreme and outrageous ... utterly intolerable"? *Agis v. Howard Johnson,* 371 Mass. 140, 145, 355 N.E.2d 315, 319 (1976) (quoting Restatement). (Counts III and IV). Counts III and IV's allegations are themselves extreme, and are so fully answered by the magistrate judge as confirmed by the district court and by what we say, incidentally, hereafter, that we will give them no further specific attention. The other claims are more difficult, as are often questions of judgment when summary disposition is sought. *Cf. Wallace v. Shade Tobacco Growers Agric. Ass'n., Inc.,* 642 F.2d 17, 19–20 (1st Cir.1981). At the same time, although our review is *de novo, Rivera–Marcano v. Normeat Royal Dane Quality A/S,* 998 F.2d 34, 37 (1st Cir.1993), we may be slow to reverse a magistrate's careful conclusions, thoughtfully reviewed. In this case we almost entirely agree with what has been said below and we affirm.

First, some dates. On November 11, 1988 Cesare Forcucci, son of plaintiffs Carmen and Theresa Forcucci, was injured in a single

vehicle accident, dying the next day. There was at first a question whether he, or one Darin Goodwin, was driving. On April 26, 1989, plaintiffs' counsel notified defendant of the accident, and requested the full medical coverage of $10,000, due regardless of who was driving. Nothing was said about UIM. On June 1 counsel wrote with respect to UIM that Goodwin's $100,000 coverage with Travelers was insufficient. Defendant paid the medical. In late September Travelers, evidently conceding that Goodwin had been the driver, offered the full $100,000 under its policy, and thereafter paid it. On November 9 plaintiffs' counsel wrote defendant that Goodwin had been convicted on October 5 of motor vehicle homicide, thus resolving the UIM issue, and repeated his demand for defendant's full UIM $100,000. Included was a handwritten Victim Impact Statement that Theresa Forcucci had submitted to the criminal court prior to Goodwin's sentencing, describing the effects upon her of her son's loss.

On November 28, having received no response, plaintiffs' counsel, by fax, asked defendant why it did not respond. On December 4, having received no reply, counsel telephoned defendant and was told that it was awaiting completion of its investigation into the possibility of plaintiffs making a claim against the nightclub that had supplied Goodwin with alcoholic beverages. Asked why this was relevant, defendant's claim representative could give no answer. On December 5 plaintiffs mailed a demand letter for unfair settlement practices pursuant to G.L. c. 93A, § 9(3). This extensive letter referred, *inter alia,* to a recent Massachusetts case, *Bertassi v. Allstate Ins. Co.,* 402 Mass. 366, 522 N.E.2d 949 (1988), that held that an insurer's investigation of possible dram shop liability was no excuse for delay. The certified receipt shows that this letter was received on December 11. Defendant replied by fax on January 11, 1990, offering $25,000 in full settlement. On January 18 counsel

replied by certified mail that $25,000 was grossly inadequate and stating that plaintiffs were instituting arbitration proceedings forthwith pursuant to the policy provisions.

■ Plaintiffs' first claim is that defendant's offer was not "prompt," one of the four objections to the magistrate's report, because it was made 31 days from the date of its receipt of plaintiffs' December 5 letter, rather than within 30. Thirty days is a statutory period relating to a defendant's opportunity to receive Ch. 93A protection, Mass.G.L. c. 93A, § 9(3), not to the statutory requirement of a reasonably prompt response. Mass.G.L. c. 176D, § 3(9). Especially with the holiday season interference we accept the magistrate's conclusion that 31 days was reasonably prompt as matter of law.[1]

■ The more serious question is whether $25,000 was a reasonable offer. The magistrate found it was on the low side, but reasonable as matter of law. In agreeing with him we stress two factors; one, perhaps more than he did, and one that he did not stress at all. Negotiating a settlement, particularly when the damages are unliquidated, is, to an extent, a legitimate bargaining process. The statute does not call for defendant's final offer, but only one within the scope of reasonableness. Experienced negotiators do not make their final offer first off, and experienced negotiators do not expect it, or take seriously a representation that it is. Indeed, plaintiffs say as much in now intimating that their own $100,000 policy limits offer was not final in spite of the fact that, in several talks, they refused to reduce it.

The reasonableness of a defendant's response is to be considered in the light of the situation as a whole, one aspect of which was the size of plaintiffs' demand. Plaintiffs' demand was very high.[2] Ordinary give and take would suggest that both would and should move. Defendant was not ever given that opportunity, even when it traded against itself, as shown in the magistrate's report.

---

1. We further ask, if plaintiffs consider 30 days appropriate, may not a fax on the 31st day be equivalent to a letter mailed on the 30th?

2. In saying this we may look at the arbitrator's finding of $55,000. Plaintiffs' complaint of the magistrate's giving weight hereto overlooks that the statute expressly permits it. Mass.G.L. c. 176D, § 3(9)(g). Their contention that he accepted it out of hand is incorrect.

As to defendant's alleged bad faith, this is not a case like *Whyte v. Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005 (1st Cir.1987).

We have only one problem, the last minute expression of defendant's legal department's fear that $100,000 would be a likely outcome. How over-large that opinion might be is indicated by the arbitrator's finding. See n. 2, *ante.* This brings us to Theresa Forcucci's extensive victim impact statement, submitted in support of her claim herein. With the greatest respect for a bereaved mother who has suffered a great tragedy, a jury's response is not necessarily predictable. Defendant's legal department's belief that a jury might give it great weight did not destroy the reasonableness of the claim department's opinion that it might not. Two different views could both be reasonable. Apprehensions did not make the lower offer unreasonable, particularly where, in dollars, that offer was the nearer to the arbitrator's finding.

We accept the magistrate's recommendation in substance, and affirm the district court.